Estado Libre Asociado De Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| LUIS CÓRDOVA DEXTER, Y OTROS | | Apelación procedente del Tribunal de Primera Instancia, Sala Superior de San Juan |
| Apelante | KLAN202300584 | Sobre: Sentencia Declaratoria; Injunction; Acceso a la Información; Remedio Sumario al Amparo de la Ley de Corporaciones; Acción Derivativa; Violación de Deberes Fiduciarios; Incumplimiento de Contrato; Dolo; Daños y Perjuicios; Disolución de la Corporación |
| v. | | |
| INTERIOR SYSTEMS GROUP, INC., Y OTROS | | |
| Apelados | | Caso Número: SJ2020CV03231 |

Panel integrado por su presidenta, la Juez Domínguez Irizarry, la Juez Rivera Marchand y el Juez Salgado Schwarz

Domínguez Irizarry, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico a 22 de noviembre de 2024.

El apelante, señor Luis Córdova Dexter, comparece ante nos para que revoquemos la *Sentencia Parcial* emitida por el Tribunal de Primera Instancia, Sala de San Juan, el 8 de junio de 2023, notificada a las partes el 9 de junio de 2023. Mediante la misma, el foro primario desestimó parcialmente una demanda de sentencia declaratoria, acceso a la información, acción derivativa, incumplimiento de contrato, dolo daños y perjuicios y violación al deber de fiducia, incoada en contra de los aquí apelados, Interior Systems Group, Inc., Midel Gómez Jorge, Javier Gómez Jorge, sus respectivas esposas y Sociedades Legales de Bienes Gananciales. La acción de autos se presentó al amparo de las disposiciones de la Ley

General de Corporaciones, Ley 164-2009, 14 LPRA sec. 3501, *et seq.*, según enmendada.

Por los fundamentos que expondremos a continuación, se confirma la *Sentencia Parcial* apelada.

**I**

Toda vez que la presente causa se origina en los mismos hechos de los cuales se derivó la controversia adjudicada por este Foro mediante *Sentencia* del 7 de noviembre de 2023 en el recurso de *certiorari* KLCE202300744, haremos referencia exacta a aquellos expuestos en el aludido dictamen, ello en cuanto a lo pertinente a la causa de epígrafe. Procedemos.

El 17 de junio de 2020, el apelante Córdova Dexter incoó una *Demanda* en contra de ISG y Midel Gómez Jorge. En síntesis, la parte demandante suplicó al Tribunal de Primera Instancia que expidiera un interdicto ordenando a Midel Gómez Jorge (así como a cualquier otra persona que actuara en su representación) a abstenerse de realizar actos de administración de la corporación ISG y privándolo de sus prerrogativas como director y accionista de ISG. Además, solicitó que ordenara a la parte demandada permitir a la parte demandante accesar los documentos relacionados a la administración, operación y asuntos financieros de ISG. Por último, solicitó que se designara a Jesse Ortiz Umpierre como administrador judicial y se realizara una auditoría formal por conducto de un contador público autorizado independiente.

Luego de varias instancias interlocutorias que resultan innecesario pormenorizar,[1] el Tribunal de Primera Instancia (Sala de Recursos Extraordinarios) dictó una *Sentencia Parcial* en la cual

---

[1] Entre los asuntos interlocutorios se destacan que, la demanda fue enmendada el 27 de julio de 2020 a los fines de acumular a Javier Gómez Durand como demandado. Además, la parte demandada solicitó la desestimación del pleito, a lo cual se opuso la parte demandante el 27 de julio de 2020. A lo antes indicado se añade que, la parte demandante presentó una *Moción Urgente Informando Posible Patrón de Evasión Contributiva y Reiterando Solicitud de Designación de Administrador Judicial* el 28 de octubre de 2020.

desestimó la causa de acción de *injunction* y ordenó la continuación de los procedimientos en el foro civil ordinario. En particular, y tras consignar nueve hechos incontrovertidos, puntualizó que el apelante Córdova Dexter no había sufrido daño irreparable alguno que debía compensarse mediante un remedio interdictal. A esos efectos, determinó que sus alegaciones sobre la acción derivativa y su solicitud de compensación podían ventilarse en un proceso ordinario ulterior.

Posteriormente, ISG, Midel Gómez Jorge y Javier Gómez Durand acreditaron su *Contestación a Demanda Enmendada y Reconvención*. En esencia, negaron las alegaciones y consignaron sus defensas afirmativas. Puntualizaron que, el 21 de mayo de 2019, las partes crearon ISG como una corporación íntima. Detallaron que, el capital de las acciones de ISG consiste en treinta (30) acciones comunes, de las cuales Luis Córdova Dexter posee quince (15), equivalente a un cincuenta por ciento (50%) de participación. De las restantes quince (15) acciones comunes, Midel Gómez Jorge posee siete punto cinco (7.5), equivalente a un veinticinco por ciento (25%) de participación y Javier Gómez Durand las remanentes siete punto cinco (7.5) acciones comunes, igual a un veinticinco por ciento (25%) de participación. Dichas personas fungían como directores y oficiales de la corporación ISG.

En el referido pliego, indicaron que, en agosto de 2019, las partes suscribieron un contrato para adquirir otra corporación, Interior Systems Inc. (ISI), un negocio de distribución de líneas de productos y materiales de construcción. Alegaron que, en su origen, el propósito de crear ISG era precisamente para adquirir ISI, y, así, fortalecer las actividades de negocio que realiza Cordex Construction Corporation, Inc. (Cordex), una compañía que presuntamente posee el apelante junto a otra llamada Cordex Agro, LLC. Sin embargo y según las alegaciones de la reconvención, el apelante Córdova

Dexter, no cumplió con ciertos pagos para la capitalización operacional de la corporación ISG y, coetáneo a ello, la empresa Cordex incurrió en ciertos impagos por mercancía obtenida. Por ello, alegaron que Córdova Dexter les adeuda $738,489.00, correspondiente al capital operacional no pagado y por concepto de los préstamos incurridos para cubrir las deudas, más $1,059,698.90 por pérdidas, daños y perjuicios. Imputaron deudas adicionales a Cordex Agro, LLC.

En su réplica a la reconvención, el apelante Córdova Dexter aceptó ser accionista de la corporación Cordex Construction Corporation y miembro de la corporación Cordex Agro, LLC. Explicó que Cordex Construction se dedica a la construcción de edificios y residencias mientras que Cordex Agro al negocio de agricultura, siembra y venta de productos agrícolas. De otra parte y tras negar las alegaciones, suplicó al foro primario declarar sin lugar la reconvención. Entre otros argumentos, adujo que los únicos accionistas y dueños de ISG son Córdova Dexter y Gómez Jorge, en partes iguales. Ello, debido a que, presuntamente, Gómez Durand no formó parte de la transacción ni se acordó que este ocuparía un puesto como director, oficial o accionista de ISG. Asimismo, recalcó siempre haber obrado de buena fe y expuso que su aportación económica estaba supeditada a que los demandados le suministraran la información financiera requerida que le permitiera cuantificarla, entre otros factores.

Pendiente lo anterior, el Tribunal de Primera Instancia autorizó el descubrimiento de prueba y entretuvo solicitudes de remedios provisionales presentadas por Córdova Dexter quien, además, instó una *Segunda Demanda Enmendada*[2] el 21 de julio de

---

[2] En esta segunda demanda enmendada, el demandante amplió sus alegaciones sobre los incumplimientos de los demandados, se incluyó como parte demandante a Córdex Construction Corporation Inc. y como demandados adicionales a los siguientes: Vanessa Benet López y la sociedad legal de gananciales Gómez Jorge-Benet; Fulana de Tal y la sociedad legal de gananciales compuesta por Gómez

2021. En ella, incluyó demandados adicionales e incoó ocho causas de acción en contra de los demandados, a saber: daños por violación al deber de fiducia; acción de nulidad contractual por dolo, sentencia declaratoria, solicitud de acceso a libros corporativos de ISG, solicitud para que se nombre un administrador judicial, solicitud para que se ordene una auditoría de ISG, solicitud de disolución de la corporación y solicitud de imposición de honorarios de abogado por temeridad. En particular, en cuanto a la causa de acción sobre nulidad contractual por dolo, el apelante alegó que, si bien, el 24 de enero de 2020, suscribió un contrato intitulado *Acuerdo entre Accionistas Corporativos* (*Acuerdo entre Accionistas*)*,* su consentimiento se obtuvo mediante engaño, desinformación y maquinaciones insidiosas atribuibles a los apelados. Más adelante en el proceso, el apelante presentó una *Tercera Demanda Enmendada* el 15 de febrero de 2022. Ello, a los únicos fines de incluir como codemandada a Fabiola Fernández Mestres, esposa de Javier Gómez Durand.

A su vez, los demandados incoaron una *Demanda Contra Terceros* en contra de Interior Systems Building Materials, LLC (ISBM), Lilliam Sánchez; Fulano de Tal y la Sociedad Legal de Gananciales compuesta por ambos. Entre otras alegaciones, resaltaron que, durante el presente litigio, el 16 de diciembre de 2020, Córdova Dexter y Lilliam Sánchez, (contralora de Cordex y Cordex Agro, LLC), organizaron una corporación que denominaron Interior Systems Building Materials, LLC (cuyo nombre es similar a Interior System Group, Inc. o ISG), con el propósito de dedicarse a la compra y venta de materiales de construcción en competencia desleal con ISG, confundiendo, así, a terceras personas del mercado

---

Durand y Fulana de Tal; Target Point, Inc.; Target Point Media, Inc.; Target Point Entertai[n]ment, Inc.; Fuerza Industrial, Inc.; X & X Real Estate, Inc.; Empresas de Soldadura, Inc.; La Caja de las Herramientas, Inc.; La Casa de los Tornillos, Inc.; y Central Bolt, Inc. (demandados).

y provocando múltiples daños a ISG. De otra parte, los demandados acreditaron su *Contestación a la Segunda Demanda Enmendada y Segunda Reconvención Enmendada.* En ella insistieron que, el demandante adeuda las cuantías reclamadas y que este ha sido temerario al prolongar innecesariamente su pago, entre otros reclamos.

Así las cosas, y en atención a las solicitudes de los remedios provisionales pendientes ante su consideración, el 18 de marzo de 2021, el Tribunal de Primera Instancia denegó la solicitud de nombramiento de un administrador judicial en esa etapa de los procesos. Además, rechazó, mediante una *Resolución* emitida el 28 de marzo de 2022, la solicitud de designación de un director provisional. En su petitorio de reconsideración sobre lo anterior, el demandante también reiteró su solicitud de que se efectuara una auditoría a la empresa ISG.  Sin embargo, el Tribunal de Primera Instancia declaró *No Ha Lugar* la referida súplica, mediante una *Resolución* emitida el 13 de abril de 2022.

El 18 de julio de 2022, los demandados, y aquí apelados, presentaron una *Moción de Sentencia Parcial.*[3] Específicamente,

---

[3] Los apelados acompañaron el referido pliego con la siguiente prueba documental: 1) copia de la toma de deposición del apelante, con fecha del 23 de febrero de 2022; 2) copia de declaración jurada suscrita por el señor Midel Gómez Jorge, Presidente de ISG, suscrita el 2 de junio de 2022; 3) copias de *Informes Anuales* de ISI para los años comprendidos entre el 2012 y el 2017; 4) estados financieros auditados de ISI para los años 2017 y 2018; 5) copia del Certificado de Registro de ISG; 6) copia del Certificado de Incorporación de ISG; 7) copia del contrato de compraventa intitulado *Asset Purchase Agreement*, suscrito entre ISG, por conducto del señor Midel Gómez Jorge y la compañía ISI, representada por la señora Hilda Marrero Rodríguez; 8) copia de contrato intitulado *Acuerdo ente Accionistas Corporativos* suscrito entre las partes de epígrafe el 24 de enero de 2020; 9) copia de *Sentencia* notificada el 27 de octubre de 2021 en al caso Núm. SJ2021CV00813, decretando el desistimiento de una demanda incoada por ISG en contra de Cordex Construction Corporation; 10) copia de declaración jurada suscrita por Javier Gómez Durand, Secretario de ISG; 11) copia de *Minuta de Reunión* de ISG, celebrada el 21 de enero de 2020; 12) copia de declaración jurada suscrita por Carlos V. Galanes Rivera, principal oficial de financiero de La Casa de los Tornillos; 13) copia de desglose de préstamos de oficiales de ISG; 14) copia de cheques; 15) copia de estado de cuenta bancario de ISG, correspondiente al mes de agosto de 2019; 16) copia *Balance Sheet* de  la cuenta bancaria de ISG, con fecha del 31 de diciembre de 2019; 17) copia de Planilla de Contribución sobre Ingresos de Corporaciones, radicada por ISG para el periodo contributivo 2018 a 2019; 18) copia de Planilla Mensual de Impuesto sobre Ventas y Uso de ISG para los meses de enero a junio de  2020, respectivamente, y documentos relacionados; 19) copia de Certificación de Deuda negativa del Centro de Recaudación de Ingresos Municipales; 20) copia de Determinación Administrativa Núm. 20-10

plantearon que no existía controversia de hechos en cuanto a que el apelante Córdova Dexter no estaba ajeno al contenido de los libros corporativos de ISG, así como, tampoco, a la información atinente a las operaciones y asuntos financieros de la entidad. Al respecto, sostuvieron que este tenía pleno acceso a todos los récords y estados de cuentas de la empresa, por lo que calificaron de académica la súplica en virtud de la cual este requirió al tribunal que ordenara su acceso a los libros corporativos. Añadieron, por igual, que el apelante nunca impugnó el certificado de incorporación de la empresa, el cual no contenía cláusula alguna que facultara a los accionistas a optar por la disolución de la corporación, ni cuestionó la composición de la Junta de Directores de ISG. A su vez, indicaron que tampoco existía disputa alguna en cuanto a que, el apelante revisó el *Acuerdo entre Accionistas* de ISG, todo previo a suscribirlo. Sobre dicho particular, destacaron que, tanto el apelante, como su abogado, examinaron los pactos establecidos en el contrato de referencia y que, tras ello, este, voluntariamente, se obligó a los términos en virtud de los cuales se estipularon las condiciones, derechos y obligaciones de los accionistas de ISG, hecho que derrotaba sus alegaciones sobre dolo en la contratación. De igual forma, sostuvieron que el funcionamiento de ISG nunca se vio afectado por las diferencias entre sus accionistas, lo que, unido a la admisión del apelante, en cuanto a que no tenía prueba sobre el mal manejo de las operaciones y los fondos de la entidad, hacía improcedente las alegaciones sobre daños por incumplimiento del deber de fiducia, así como las peticiones sobre designación de un administrador judicial y de auditoría de la corporación. De este modo, los apelados solicitaron que se dictara sentencia sumaria

---

emitida por el Departamento de Hacienda y documentos relacionados; 21) copia de estados de cuenta bancarios de los meses de diciembre de 2019 a julio de 2020; 22) copia de toma de deposición al señor José Barletta Rodríguez, con fecha del 14 de febrero de 2022; 23) copia de toma de deposición a la señora Hilda Marrero Rodríguez, con fecha del 18 de febrero de 2022.

parcial a favor, decretando la desestimación de las ocho causas de acción promovidas por el apelante, bajo el fundamento de insuficiencia de prueba.

Tras ciertas incidencias no pertinentes a la controversia que nos ocupa, el 7 de febrero de 2023, el apelante Córdova Dexter presentó su *Oposición a Sentencia Sumaria Parcial.[4]* En el pliego, expresó que los argumentos expuestos por los apelados en su solicitud de sentencia sumaria, incumplían con los requisitos procesales atinentes al referido mecanismo adjudicativo. En particular, arguyó que la procedencia de una alegación sobre insuficiencia de prueba estaba sujeta a la efectiva inexistencia de evidencia, carga probatoria que, a su juicio, los apelados incumplieron en el pliego. A tenor con dicha afirmación, el apelante calificó de argumentos impertinentes, opiniones, caracterizaciones generalizadas y conclusiones de derecho los hechos propuestos por los apelados en la solicitud de sentencia sumaria parcial en controversia, y se reafirmó en que los mismos no satisfacían las exigencias procesales provistas para disponer del asunto entre las partes. A su vez, reputó como frívola la pretensión de los apelados, ello, en cuanto a que se decretara la desestimación de la demanda de autos, al sostener que estos conocían que disponía de prueba testifical y documental para probar su caso. De este modo, el apelante solicitó al Tribunal de Primera Instancia denegar la *Moción de Sentencia Sumaria Parcial* promovida por los apelados y, en

---

[4] El apelante acompañó su pliego con la siguiente prueba documental: 1) copia de toma de deposición del señor Luis A. Feliciano Limardo, con fecha del 18 de febrero de 2022; 2) copia de toma de deposición del señor Luis Córdova Dexter, con fecha del 23 de febrero de 2022; 3) copia de toma de deposición de la señora Lilliam Sánchez Rosario, con fecha del 22 de noviembre de 2022; 4) copia de *Moción en Cumplimiento de orden y para que se Dicte Sentencia* conjuntamente sometida por las partes de epígrafe, en la que se admitió que la empresa Cordex sostenía una deuda con ISG ascendente a $451,2225.34; 5) copia de toma de deposición del señor José M. Barletta Rodríguez, con fecha del 14 de febrero de 2022; 6) copia de toma de deposición del señor Javier Antonio Gómez Durand, con fecha del 24 de febrero de 2022; 7) copia de facturas, conduces, órdenes de compra y recibos de los negocios, La Caja de las Herramientas, La Casa de los Tornillos y de la entidad ISG; 8) copia de toma de deposición de del señor Midel Gómez Jorge, con fecha del 15 de marzo de 2022.

consecuencia, que se diera curso al trámite ordinario de los procedimientos.

El 3 de marzo de 2023, los apelados presentaron escrito de *Réplica a la Oposición a "Moción de Sentencia Sumaria Parcial".* Esta vez, reprodujeron los argumentos que expusieron en su solicitud de sentencia sumaria y se reafirmaron en que el apelante carecía de evidencia suficiente a los fines de probar las causas de acción en las que fundamentó su demanda. Tras efectuar una relación de las mismas, los apelados sostuvieron que los hechos no controvertidos expuestos en su pliego, principalmente, se sostenían en las admisiones del apelante y de su perito durante el trámite del caso. Añadieron que el apelante propuso alegaciones conclusivas que no derrotaban el carácter incontrovertible de sus afirmaciones, hecho que le impedía prevalecer en su súplica. De igual forma, indicaron que, contrario a lo aducido, su solicitud de sentencia sumaria observó las exigencias procesales establecidas por el ordenamiento jurídico y se reafirmaron en que sus argumentos encontraban apoyo legal y fáctico. Así, solicitaron al tribunal primario que proveyera para su petición conforme expuesta en la *Moción de Sentencia Sumaria Parcial.*

Tras los trámites de rigor pertinentes al asunto aquí en controversia, el 9 de junio de 2023, el Tribunal de Primera Instancia notificó la *Sentencia Parcial* que nos ocupa. Al entender sobre las causas de acción de la demanda, ello a la luz de los planteamientos expuestos en la solicitud de sentencia sumaria parcial de los apelados y de aquellos propuestos la oposición incoada por el apelante, resolvió que, contrario a los planteamientos de este, el consentimiento que prestó en el *Acuerdo entre Accionistas* no estuvo viciado por dolo. Al abundar, expresó que, la prueba documental sometida a su consideración evidenciaba que el apelante tuvo amplia oportunidad de examinar el borrador del contrato en

controversia, que lo discutió con su abogado y que fue debidamente informado sobre su contenido, particularmente de sus derechos, obligaciones y designaciones como accionista de ISG. A ello añadió que el apelante no controvirtió las referidas afirmaciones, mediante la presentación de prueba que acreditara que, al acoger los términos del *Acuerdo de Accionistas*, lo hizo mediando dolo grave o incidental imputable a los apelados. Así, dispuso que, toda vez la ausencia de prueba que sostuviera sus alegaciones al respecto, ninguna nulidad podía decretarse en cuanto al contrato impugnado.

En su dictamen, el tribunal primario también concluyó que el apelante no presentó prueba que justificara el nombramiento de un administrador judicial para velar por las operaciones de ISG y que, en consecuencia, derrotara las afirmaciones que los apelados expusieron en contrario. Sobre este particular, indicó que el apelante no demostró que los negocios de la corporación se hubiesen visto amenazados o perjudicados a causa de las desavenencias de sus accionistas. Por el contrario, destacó que su solicitud se produjo cuando los apelados le reclamaron el pago de una suma de dinero que adeudaba para la capitalización operacional de la entidad y cuya obligación de pago asumió al momento de la creación de ISG. Toda vez lo anterior, el tribunal apuntó que si bien el Artículo 14.15 de la Ley de General de Corporaciones, Ley 164-2009, 14 LPRA sec. 3835, proveía para la posibilidad de designar un administrador judicial respecto a los negocios de una operación íntima, en el caso de autos, no concurrían los criterios allí dispuestos. Así, sostuvo que las alegaciones expuestas por el apelante para sustentar su petitorio carecían de apoyo fáctico.

A igual conclusión llegó el Tribunal de Primera Instancia en cuanto a la solicitud en virtud de la cual el apelante requirió que se ordenara la disolución de ISG, ello a tenor con lo establecido en el Artículo 14.11 de la Ley de Corporaciones, *supra*. En principio,

destacó que, ni en la demanda enmendada de epígrafe, ni en su escrito en oposición a la solicitud de sentencia sumaria parcial promovida por los apelados, el apelante expuso las razones precisas que, en ley, ameritaran un decreto de disolución. A su vez, expuso que, para acoger una solicitud de disolución de una corporación íntima, el referido Artículo exigía que dicha facultad estuviera expresamente establecida en el certificado de incorporación de la entidad. Conforme dispuso, el certificado de incorporación de ISG no incluyó cláusula alguna que permitiera a sus accionistas a peticionar su disolución, ni fue enmendado a dichos efectos. De esta forma, la Juzgadora determinó que, el remedio solicitado por el apelante al amparo de la letra de Artículo 14.11 de la Ley de Corporaciones, *supra*, era improcedente en derecho.

Por su parte, con relación a la causa de acción por la cual el apelante solicitó que se decretara su facultad para tener acceso a los libros corporativos de ISG, el Tribunal de Primera Instancia determinó que su requerimiento era académico. Sobre ello, hizo referencia a la *Sentencia Parcial* emitida en el caso de autos el 30 de octubre de 2020, mediante la cual se resolvió que al apelante se le dio entero acceso a toda la documentación relacionada a la administración, operaciones y finanzas de ISG.

A su vez, el tribunal primario también dispuso del reclamo en virtud del cual el apelante solicitó que se ordenara una auditoría sobre las operaciones de ISG, por alegadas irregularidades e inconsistencias por parte los apelados. Sobre este asunto, igualmente resolvió que el apelante no presentó prueba que estableciera alguna incorrección o falta de confiabilidad en los resultados operacionales de la Corporación, como resultado de actos u omisiones por parte de los apelados. Así, sostuvo que la referida súplica tampoco podía proceder.

Ahora bien, en la *Sentencia Parcial* que nos ocupa, el Tribunal de Primera Instancia expresó que, respecto a las alegaciones sobre daños por incumplimiento del deber de fiducia, conforme sostenido por el apelante, la prueba documental sometida por los apelados no estableció una efectiva inexistencia de controversia de hechos. En particular, indicó que resultaba meritorio auscultar con mayor rigor si ISG, por conducto de sus accionistas, cumplió cabalmente con ciertas obligaciones de pago relativas a su negocio y otras de carácter contributivo. De este modo, indicó que dichos asuntos, relacionados, los mismos, a la diligencia esperada en el manejo de una corporación por parte de sus accionistas, no podía disponerse mediante el mecanismo sumario de adjudicación. Así, a tenor con todo lo antes expuesto, el Tribunal de Primera Instancia desestimó las siguientes causas de acción; 1) nulidad de *Acuerdo de Accionistas* por dolo; 2) resarcimiento de daños por dolo contractual; 3) solicitud de orden de acceso a libros corporativos de ISG; 4) solicitud de nombramiento de administrador judicial; 5) solicitud de auditoría y; 6) solicitud de disolución de la corporación ISG a tenor de lo dispuesto en el Artículo 14.11 de la Ley de Corporaciones, *supra*. En consecuencia, ordenó la continuación de los procedimientos a los fines de dilucidar la controversia relativa al alegado incumplimiento del deber de fiducia de los apelados y los consecuentes daños derivados de ello.

Inconforme, el 6 de julio de 2023, el apelante compareció ante nos mediante el presente recurso de apelación. En el mismo, formula los siguientes señalamientos:

Primer Error:

Cometió craso error de derecho y craso abuso de discreción el TPI al declarar con lugar la *Moción de Sentencia Sumaria Parcial* radicada por los demandados apelados desestimando la causa de acción sobre disolución corporativa:

a) al considerar única y exclusivamente las disposiciones del Artículo 14.11 de la Ley de Corporaciones de Puerto Rico;
b) al no considerar las disposiciones del Artículo 14.17 de la Ley de Corporaciones de Puerto Rico;
c) sin antes haber concedido remedios al amparo de los Artículos 14.16 y 14.15 de la Ley de Corporaciones.

Segundo Error:

Cometió craso abuso de discreción el TPI al declarar con lugar la *Moción de Sentencia Sumaria Parcial* radicada por los demandados apelados desestimando la causa de acción sobre disolución corporativa al no considerar ninguno de los *Hechos que no Están en Controversia* según surgen de su propia *Resolución Enmendada* emitida el 8 de junio de 2023:

a) aun cuando los mismos dan base para conceder remedios al amparo de los Artículos 14.16 y 14.15 de la Ley de Corporaciones;
b) aun cuando los mismos dan base para que la causa de acción sobre disolución corporativa sea ventilada en sus méritos mediante la celebración de una vista evidenciaria con las garantías del debido proceso de ley.

Luego de examinar el expediente de autos y con el beneficio de la comparecencia de ambas partes de epígrafe procedemos a expresarnos.

## II

### A

La Regla 36.1 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 36.1, permite a una parte que solicite un remedio presentar una moción para que se dicte sentencia sumaria a su favor sobre la totalidad o cualquier parte de esta. Así, el tribunal podrá dictar sentencia sumaria para resolver cualquier controversia que sea separable de las controversias restantes. 32 LPRA Ap. V, R. 36.1; *Oriental Bank v. Caballero García*, 212 DPR 671, 678-679 (2023); *Camaleglo v. Dorado Wings, Inc.*, 118 DPR 20, 25 (1986). Este mecanismo procesal es un remedio de carácter extraordinario y discrecional. Su fin es favorecer la más pronta y

justa solución de un pleito que carece de controversias genuinas sobre los hechos materiales y esenciales de la causa de que trate. *Segarra Rivera v. Int'l Shipping et al.*, 208 DPR 964, 979 (2022); *Rodríguez García v. UCA*, 200 DPR 929, 940 (2018); *Roldán Flores v. M. Cuebas et al.,* 199 DPR 664, 676 (2018). Un hecho material es "aquel que puede alterar el resultado de la reclamación de acuerdo al derecho aplicable". *Segarra Rivera v. Int'l Shipping et al.,* supra, pág. 980. De este modo, y debido a la ausencia de criterios que indiquen la existencia de una disputa real en el asunto, el juzgador de hechos puede disponer del mismo sin la necesidad de celebrar un juicio en su fondo. *Universal Ins. y otro v. ELA y otros,* 211 DPR 455, 457 (2023); *León Torres v. Rivera Lebrón,* 204 DPR 20, 41 (2020); *Luan Invest. Corp. v. Rexach Const. Co.,* 152 DPR 652, 665 (2000).

La doctrina considera que el uso apropiado de este recurso contribuye a descongestionar los calendarios judiciales y fomenta así los principios de celeridad y economía procesal que gobiernan nuestro ordenamiento jurídico. *Segarra Rivera v. Int'l Shipping et al.,* supra, págs. 979-980*; Vera v. Dr. Bravo,* 161 DPR 308, 331-332 (2004). Por tanto, la sentencia sumaria permite la pronta adjudicación de las controversias cuando una audiencia formal resulta en una dilación innecesaria de la tarea judicial. Así pues, esta solo debe ser utilizada en casos claros, cuando el tribunal tenga ante sí la verdad de todos los hechos esenciales alegados en la demanda y falte solo disponer de las controversias de derecho existentes. *Roldán Flores v. M. Cuebas et al.,* supra, pág. 676; *Vera v. Dr. Bravo,* supra, pág. 334; *PFZ Props., Inc. v. Gen. Acc. Ins. Co.,* 136 DPR 881, 911-912 (1994).

La parte promovente de una solicitud de sentencia sumaria está obligada a establecer mediante prueba admisible en evidencia la inexistencia de una controversia real respecto a los hechos

materiales y esenciales de la acción. Además, deberá demostrar que, a la luz del derecho sustantivo, amerita que se dicte sentencia a su favor. *Rodríguez García v. UCA,* supra, pág. 941; *Ramos Pérez v. Univisión,* 178 DPR 200, 218 (2010); *Vera v. Dr. Bravo,* supra, pág. 333. Para que tal sea el resultado, viene llamado a desglosar en párrafos numerados los hechos respecto a los cuales aduce que no existe disputa alguna. Una vez expuestos, debe especificar la página o párrafo de la declaración jurada u otra prueba admisible que sirven de apoyo a su contención. 32 LPRA Ap. V, R. 36.3(a)(4); *Roldán Flores v. M. Cuebas, et al.,* supra, pág. 677*; SLG Zapata-Rivera v. J.F. Montalvo,* supra, págs. 432-433.

Para derrotar una moción de sentencia sumaria, la parte que se opone a la misma viene llamada a presentar declaraciones juradas o documentos que controviertan las alegaciones pertinentes. 32 LPRA Ap. V, R. 36.5. Por ello, tiene la obligación de exponer de forma detallada aquellos hechos relacionados al asunto que evidencien la existencia de una controversia real que deba ventilarse en un juicio plenario. *Roldán Flores v. M. Cuebas, et al.,* supra, pág. 678*; SLG Zapata-Rivera v. J.F. Montalvo,* supra, pág. 434; *Rodríguez de Oller v. TOLIC,* 171 DPR 293, 311 (2007). En esta tarea, tiene el deber de citar específicamente los párrafos, según enumerados por el promovente, sobre los cuales estima que existe una genuina controversia y, para cada uno de los que pretende controvertir, detallar de manera precisa la evidencia que sostiene su impugnación. Regla 36.3(b)(2) de Procedimiento Civil, *supra*; *SLG Zapata-Rivera v. J.F. Montalvo,* supra, pág. 433.

Cuando de las propias alegaciones, admisiones o declaraciones juradas surge una controversia *bona fide* de hechos, la moción de sentencia sumaria resulta ser improcedente. Ante ello, el tribunal competente debe abstenerse de dictar sentencia sumaria en el caso y cualquier duda en su ánimo lo debe llevar a resolver en

contra de dicha solicitud. *Vera v. Dr. Bravo,* supra, págs. 333-334*; Mgmt. Adm. Servs., Corp. v. ELA,* 152 DPR 599, 611 (2000)*.* Al evaluar la solicitud de sentencia sumaria, el tribunal debe cerciorarse de la total inexistencia de una genuina controversia de hechos. *Rodríguez García v. UCA,* supra, pág. 941; *Roig Com. Bank v. Rosario Cirino,* 126 DPR 613, 618 (1990). Lo anterior responde a que todo litigante tiene derecho a un juicio en su fondo cuando existe la más mínima duda sobre la certeza de los hechos materiales y esenciales de la reclamación que se atienda. *Sucn. Maldonado v. Sucn. Maldonado,* 166 DPR 154, 185 (2005). Por ese motivo, previo a utilizar dicho mecanismo, el tribunal deberá analizar los documentos que acompañan la correspondiente solicitud junto con aquellos sometidos por la parte que se opone a la misma y los otros documentos que obren en el expediente del tribunal. Iguales criterios debe considerar un tribunal apelativo al ejercer su función revisora respecto a la evaluación de un dictamen del Tribunal de Primera Instancia emitido sumariamente. *Segarra Rivera v. Int'l Shipping et al.*, supra, págs. 981-982; *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 114 (2015); *Vera v. Dr. Bravo,* supra, pág. 334.

En *Meléndez González et al. v. M. Cuebas,* supra, págs. 118-119, el Tribunal Supremo de Puerto Rico estableció el estándar específico a emplearse por este foro apelativo intermedio al revisar las determinaciones del foro primario con relación a los dictámenes de sentencias sumarias. A tal fin, se expresó como sigue:

> **Primero,** reafirmamos lo que establecimos en *Vera v. Dr. Bravo,* supra, a saber: el Tribunal de Apelaciones se encuentra en la misma posición del Tribunal de Primera Instancia al momento de revisar Solicitudes de Sentencia Sumaria. En ese sentido, está regido por la Regla 36 de Procedimiento Civil, *supra*, y aplicará los mismos criterios que esa regla y la jurisprudencia le exigen al foro primario. Obviamente, el foro apelativo intermedio estará limitado en el sentido de que no puede tomar en consideración evidencia que las partes no presentaron ante el Tribunal de Primera Instancia y

no puede adjudicar los hechos materiales en controversia, ya que ello le compete al foro primario luego de celebrado un juicio en su fondo. La revisión del Tribunal de Apelaciones es una *de novo* y debe examinar el expediente de la manera más favorable a favor de la parte que se opuso a la Moción de Sentencia Sumaria en el foro primario, llevando a cabo todas las inferencias permisibles a su favor.

**Segundo,** por estar en la misma posición que el foro primario, el Tribunal de Apelaciones debe revisar que tanto la Moción de Sentencia Sumaria como su Oposición cumplan con los requisitos de forma codificados en la Regla 36 de Procedimiento Civil, *supra,* y discutidos en *SLG Zapata-Rivera v. JF Montalvo,* supra.

**Tercero,** en el caso de revisión de una Sentencia dictada sumariamente, el Tribunal de Apelaciones debe revisar si en realidad existen hechos materiales en controversia. De haberlos, el foro apelativo intermedio tiene que cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil y debe exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos. Esta determinación puede hacerse en la Sentencia que disponga del caso y puede hacer referencia al listado numerado de hechos incontrovertidos que emitió el foro primario en su Sentencia.

**Cuarto,** y por último, de encontrar que los hechos materiales realmente están incontrovertidos, el foro apelativo intermedio procederá entonces a revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia.

**B**

Por su parte, las leyes corporativas son instrumentos utilizados por los gobiernos para estimular el desarrollo económico. *Santiago et al. v. Rodríguez et al.,* 181 DPR 204, 214 (2011). Es por esto que las corporaciones son entidades con personalidad jurídica propia y separada de sus miembros o titulares, por la que estos responderán hasta el monto de su inversión en la misma, pero no con sus bienes personales. *Miramar Marine v. Citi Walk,* 198 DPR 648, 691 (2018); C. Díaz Olivo, *Corporaciones: Tratado sobre Derecho Corporativo,* ed. 2016, pág. 15. Una corporación es, pues, una persona jurídica por virtud del reconocimiento que el Estado hace de dicha condición. *Rivera Maldonado v. E.L.A.,* 119 DPR 74, 80-81 (1987). Una vez una

corporación queda constituida, esta podrá adquirir y poseer bienes de todas clases, como contraer obligaciones, conforme a las leyes, reglas de su constitución y sus estatutos corporativos. A tenor con este principio, la Ley General de Corporaciones, Ley 164-2009, 14 LPRA sec. 3501, *et seq.,* se insertó en nuestro ordenamiento legal, a los fines de proveer para los asuntos relativos a la existencia y vida de las corporaciones en Puerto Rico. *Eagle Security v. Efrón Dorado et al.,* 211 DPR 70, 85 (2021).

Al ser, la corporación, una entidad distinta y separada de sus accionistas, ello implica la concurrencia de una autonomía patrimonial y de responsabilidades distintas y separadas a las de sus accionistas. En lo aquí concerniente, el Artículo 2.03 de la Ley General de Corporaciones, Ley 164-2009, 14 LPRA sec. 3523, establece que las facultades conferidas a los directores y oficiales serán "en beneficio de los accionistas de la corporación y para la gestión prudente de sus negocios y asuntos, así como para la promoción de sus objetivos y propósito". Así, en la ejecución de sus menesteres, los directores y oficiales de una corporación vienen obligados a cumplir con un deber de fiducia que les impone tres responsabilidades principales: la obligación de actuar dentro del marco de su autoridad, un deber de diligencia y un deber de lealtad. *Rivera Sanfeliz et al. v. Jta. Dir. First Bank*, 193 DPR 38, 52 (2015). En lo concerniente, el deber de diligencia "se refiere a la atención y el cuidado que [...] debería exhibir un director u oficial responsable y competente al ejercer de buena fe su juicio comercial". *Multinacional Ins. v. Benítez y otros,* 193 DPR 67, 78 (2015). Por su parte, el deber de lealtad "implica que los administradores habrán de llevar a cabo sus funciones para el beneficio de la corporación y no para su beneficio personal". *Íd.* En este sentido, el Artículo 4.03 de la Ley 164-2009*, supra*, reza como sigue:

> Los directores y oficiales estarán obligados a dedicar a los asuntos de la corporación y al desempeño de sus funciones, la atención y el cuidado que en una posición similar y ante circunstancias análogas desempeñaría un director u oficial responsable y competente al ejercer de buena fe su juicio comercial o su mejor juicio en el caso de las corporaciones sin fines de lucro. Sólo la negligencia crasa en el desempeño de las obligaciones y deberes antes reseñados conllevará responsabilidad.

14 LPRA sec. 3563.

Ahora bien, en virtud de lo anterior, el estado de derecho reconoce que, a los directores y oficiales de una corporación "[s]e le[s] exige diligencia y competencia en el descargo de sus funciones, pero únicamente la negligencia crasa en el cumplimiento de las obligaciones y deberes inherentes a sus puestos conllevará responsabilidad". *Rivera Sanfeliz et al. v. Jta. Dir. First Bank*, *supra*, pág. 53. No obstante, el criterio de negligencia crasa "no puede tomarse aislado del resto del precepto como imponiendo un deber general de conducta frente a todos. Más bien, debe interpretarse en el contexto del imperativo de fiducia que rige la relación de los directores y oficiales frente a la corporación". *Íd.*, págs. 53-54. De este modo, la interpretación de esta excepción al principio de responsabilidad limitada debe fundarse en el referido deber, el cual implica que estos puedan desempeñarse de manera capaz y responsable, todo a favor de los intereses de la entidad. Por tanto, únicamente serán responsables, si la corporación sufre daños como consecuencia del quebrantamiento de este deber. *Íd.*, pág. 54. Así, en la eventualidad de ello, se puede presentar una acción derivativa contra los administradores de una corporación, remedio basado en equidad que se somete por un accionista en representación de la corporación para vindicar los derechos de la entidad jurídica. *Íd.*

## C

De otro lado, como norma, la disolución de una corporación está sujeta a que la mayoría de los miembros de su junta de directores apruebe una resolución a tales efectos, así como a que se

observen los procedimientos y exigencias estatuidos en el Artículo 9.05 de la Ley 164-2009, 14 LPRA sec. 3705. Sin embargo, en el caso de las corporaciones íntimas, el estado de derecho admite la posibilidad de que cualquier accionista pueda solicitar y lograr la disolución unilateral de la corporación. A tales fines, el Artículo 14.11 de la Ley 164-2009, establece las condiciones y el proceso aplicable a dicho trámite. Específicamente, reza:

A. El certificado de incorporación de cualquier corporación íntima podrá incluir una disposición que otorgue a cualquier accionista o a los tenedores de cualquier número o por ciento específico de cualquier clase de acciones, una opción de disolver la corporación voluntariamente o si ocurriera cualquier suceso o contingencia específica. Siempre que se ejercite dicha opción, los accionistas que la ejerzan notificarán la misma por escrito a los demás accionistas. Luego de expirarse el plazo de treinta (30) días a partir de la fecha de notificación, se procederá a la disolución de la corporación como si el número requerido de accionistas con derecho al voto haya consentido por escrito a la disolución de la corporación, según se dispone en el Artículo 7.17 de esta Ley.

B. Si el certificado de incorporación, presentado originalmente, no contiene la disposición autorizada por el inciso (A), el certificado podrá enmendarse para incluir la disposición, si ésta ha sido aprobada por el voto de los tenedores de todas las acciones emitidas y en circulación, con o sin derecho al voto, a menos que el certificado de incorporación específicamente autorice dicha enmienda por un voto que no podrá en ningún momento ser menor de dos terceras (2/3) partes de todas las acciones emitidas y en circulación, con o sin derecho al voto.

C. Cada certificado de acciones de cualquier corporación cuyo certificado de incorporación autorice la disolución según lo permite este Artículo, deberá consignar tal disposición de forma conspicua en la faz de dicho documento. De no hacerse constar conspicuamente en la faz del certificado, la disposición será ineficaz.

14 LPRA sec. 3831.

Cónsono con lo anterior, y atinente a la controversia de autos, la doctrina interpretativa pertinente reconoce que:

[...]

[s]i en el certificado de incorporación nada se dispuso sobre esta posibilidad, la corporación, estará sujeta a la normativa general sobre disolución contenida en el

Artículo *9.05* de la Ley para propósitos de la disolución, aunque esté organizada como corporación íntima al amparo del Capítulo XIV de la Ley. Esto significa, que el accionista inconforme, que desea poner punto final al arreglo corporativo que sostiene con sus demás compañeros accionistas, no podrá hacerlo si no cuenta con el concurso de la mayoría de las acciones en circulación con derecho al voto.

C. Díaz Olivo, *Tratado sobre Derecho Corporativo,* 2da ed. rev., Ed. AlmaForte, 2018, pág. 506.

De otro lado, la Ley 164-2009, *supra*, contempla la posibilidad de que, a fin de proteger los intereses de una corporación, se designe un administrador judicial que asuma la gestión de sus operaciones. Pertinente a lo que nos ocupa, el Artículo 14.15 de la referida Ley, dispone las condiciones que posibilitan la designación de un administrador judicial para una corporación íntima. En específico, lee:

A. Además del Artículo 7.16 de esta Ley relacionado con la designación de un administrador judicial para cualquier corporación, el Tribunal de Primera Instancia (Sala Superior), a petición de cualquier accionista, podrá designar una o más personas como administradores judiciales de la corporación íntima y si la corporación está insolvente, como síndicos de la misma cuando:

1. Conforme al Artículo 14.08 de esta Ley, los negocios y asuntos de la corporación son administrados por los accionistas y dichos accionistas estén en desacuerdo tal que los negocios de la corporación estén perjudicándose o estén amenazados por daños irreparables y cualquier remedio a tal tranque que disponga el certificado de incorporación o los estatutos o cualquier acuerdo escrito entre los accionistas haya fallado, o

2. Los accionistas peticionarios tengan el derecho a disolver la corporación a tenor con las disposiciones del certificado de incorporación que permite el Artículo 14.11 de esta Ley.

B. Si el Tribunal de Primera Instancia (Sala Superior) determina que favorece a los mejores intereses de la corporación íntima, entonces, en lugar de designar un administrador judicial al amparo de este Artículo o del Artículo 7.16 de esta Ley, dicho Tribunal podrá designar un director provisional, cuyos poderes o estado legal será el que determine el Artículo 16.16 de esta Ley. Tal designación no impide cualquier otra orden

subsiguiente del Tribunal que disponga la designación de un administrador judicial para dicha corporación íntima.

14 LPRA sec. 3835.

Cónsono con lo anterior, sobre la designación de un director provisional a una corporación íntima, el Artículo 14.16 de la Ley164-2009, *supra*, puntualiza lo siguiente:

A. No obstante, cualquier disposición en contrario en el certificado de incorporación o en los estatutos corporativos o en un acuerdo entre accionistas, el Tribunal de Primera Instancia (Sala Superior) podrá designar un director provisional para una corporación íntima si los directores están en desacuerdo tal en relación con los negocios y asuntos de la corporación que es imposible obtener los votos necesarios para que la junta pueda actuar y en consecuencia los negocios y los asuntos de la corporación no puedan conducirse para beneficio de todos los accionistas en general.

B. Una petición de remedio a tenor con este Artículo deberá radicarse:

1. Por al menos, mitad del número de directores en funciones en ese momento;

2. Por los tenedores de por lo menos una tercera (1/3) parte de todas las acciones que en ese momento tuviesen la facultad de elegir los directores; o

3. Si hubiese más de una clase de acciones que en ese momento estuviesen facultadas para elegir uno o más directores, por los tenedores de dos terceras (2/3) partes de las acciones de cualesquiera de dichas clases; pero el certificado de incorporación de una corporación íntima podrá disponer que una proporción menor de los directores o de los accionistas o de una clase de accionistas podrá solicitar el remedio al amparo de este Artículo.

[...].

14 LPRA sec. 3836.

Ahora bien, en defecto de que la aplicación de las salvaguardas contenidas en los precitados Artículos, no surtan eficacia a los efectos de proteger los intereses de una corporación íntima, la Ley 164-2009, *supra*, consigna un mecanismo

extraordinario de disolución corporativa. Al respecto, en su Artículo 14.17, dispone:

> A. El Tribunal de Primera Instancia (Sala Superior) podrá ordenar la disolución de la corporación de hallar: 1. Que existen uno o más fundamentos para la disolución judicial al amparo del Artículo 9.13; o 2. Todos los otros remedios ordenados por el Tribunal a tenor con los Artículos 14.16 y 14.15, no han resuelto los asuntos en disputa.
>
> B. Al determinar si disuelve la corporación o no, el Tribunal considerará entre otra prueba pertinente, la condición financiera de la corporación, pero no podrá negarse a disolver sólo porque la corporación haya acumulado ganancias o utilidades operacionales corrientes.

14 LPRA sec. 3837.

**III**

En la causa que nos ocupa, el apelante, en esencia, plantea que el Tribunal de Primera Instancia erró al acoger la solicitud de los apelados y, en consecuencia, al proveer para la desestimación parcial de su causa. En específico, aduce que el foro primario incidió al desestimar la causa de acción sobre disolución corporativa, ciñéndose solo a lo dispuesto en el Artículo 14.11 de la Ley 164-2009, *supra*, y sin considerar los remedios estatuidos en los Artículos 14.15, 14.16 y 14.17 de la referida Ley. Del mismo modo, el apelante Córdova Dexter indica que el tribunal primario incurrió en abuso de discreción al disponer de la causa de acción de disolución corporativa mediante el mecanismo sumario de adjudicación, así como al no considerar una previa determinación judicial que, según alega, le permitía emplear en el caso los mecanismos alternos de designación de administrador judicial o de un director provisional a la Corporación aquí en controversia. Habiendo examinado los referidos señalamientos, a la luz el derecho aplicable, los hechos establecidos y el abundante trámite procesal acontecido en el caso de autos, resolvemos confirmar a *Sentencia Parcial* apelada.

Un examen del expediente que nos ocupa nos lleva a concluir que el pronunciamiento que atendemos es uno conforme a derecho y a la prueba presentada. De los documentos de autos, no surge controversia alguna de hechos medulares que amerite dirimir el presente asunto mediante el cauce ordinario de adjudicación. Tras ejercer nuestras funciones revisoras, coincidimos con que, en el presente caso, concurren las condiciones procesales propias a la eficacia del mecanismo adjudicativo empleado por la sala sentenciadora en las causas de acción que, al amparo del mismo, dispuso. Igualmente, intimamos que la sentencia apelada responde a una adecuada interpretación y aplicación del derecho pertinente a la materia que atendemos. Nos explicamos.

Coincidimos con que, en efecto, el apelante carece de apoyo legal y fáctico para prevalecer en los argumentos que expone sobre el asunto que somete a nuestra consideración. Tal cual lo expresamente dispuesto por el tribunal sentenciador, la causa de acción sobre disolución corporativa se encuentra desprovista de disposición en ley que amerite que se acoja el petitorio que se nos propone. En principio, destacamos que, conforme lo observado por el Tribunal de Primera Instancia, a fin de prevalecer en este argumento, el apelante no detalló las causas específicas que, ajustadas al derecho y a la prueba, deberían mover el criterio judicial pertinente a resolver a su favor. Además, su requerimiento se fundamentó en la letra del Artículo 14.11 de la Ley 164-2009, *supra*, disposición que claramente no resulta de aplicación a las circunstancias acontecidas en la controversia que nos ocupa. A fin de permitir la disolución de una corporación íntima, el referido Artículo condiciona dicho acto a que el certificado de incorporación de la entidad de que trate expresamente faculte a los accionistas con determinada participación en la misma, a proponer la solicitud correspondiente a tenor con el proceso establecido. Así, de no

concurrir dicho requisito, el ordenamiento jurídico remite a las partes a las disposiciones generales contenidas la Ley 164-2009, *supra,* a los fines de gestionar una disolución corporativa.

En el caso de autos, conforme resuelto, y según correctamente argumentan los apelados, el certificado de incorporación de ISG no confiere potestad a sus tres accionistas para solicitar la disolución de la Corporación. Así pues, en ausencia de prueba que demuestre lo contrario, ningún remedio en ley le asiste al apelante a la luz del estatuto invocado. Además, nada en la prueba documental acredita que el certificado de incorporación de ISG haya sido enmendado a los efectos de incluir la disposición que permitiría a sus accionistas peticionar la disolución de la entidad. De la misma forma, y según se argumentó ante nos, el apelante no demostró haber impugnado el contenido del mismo, lo que, unido a lo antes establecido, permite resolver que no controvirtió los hechos establecidos en la solicitud de sentencia sumaria parcial promovida por los apelados.

Por su parte, el apelante cuestiona el ejercicio adjudicativo empleado por el foro primario al disponer de su causa de acción sobre disolución corporativa, al plantear que, a los fines de atender la misma, solo se consideró la letra del Artículo 14.11, *supra,* y no los remedios contenidos en los Artículos 14.15, 14.16 y 14.17 de la Ley 164-2009, *supra.* Sin embargo, distamos de su raciocinio. En primer lugar, los Artículos 14.15 y 14.16, *supra,* si bien proveen remedios particulares para la protección de los intereses de una corporación, no contemplan vía alguna para disponer de una petición de disolución corporativa. Así, en estricto derecho, al invocar las disposiciones en cuestión, el apelante se apartó de su obligación de exponer el respaldo legal en el que debería descasar la procedencia de sus argumentos.

Ahora bien, es la contención del apelante que, lo resuelto por el Tribunal de Primera Instancia mediante la *Resolución Enmendada*

del 8 de junio de 2023, "da base para conceder los remedios"[5] estatuidos en los Artículos 14.15 y 14.16, *supra*, a la causa de autos. Específicamente, aduce que, en la misma, se resolvió el carácter incontrovertido de ciertos hechos relacionados a la controversia, que debieron haber sido considerados por el tribunal para efectuar la designación de un administrador judicial o un director provisional, respectivamente. Nuevamente erra. Tal cual lo dispuesto, el Artículo 14.15, *supra*, contempla el nombramiento de un administrador judicial para que asuma los roles operacionales y administrativos de una corporación íntima, bajo circunstancias taxativas y expresamente delineadas en el mismo. En particular, el Artículo de referencia permite que, discrecionalmente, el tribunal nombre un administrador, en ocasión a que demuestre que, desacuerdos y desavenencias considerables entre los accionistas de determinada corporación íntima, tienen el efecto de perjudicar los negocios de la empresa, o de constituir una amenaza real de daño irreparable a los mismos. A su vez, el Artículo también permite que el Tribunal designe un administrador cuando el certificado de incorporación de la corporación íntima, incluya la disposición que faculta a sus accionistas a solicitar la disolución de la empresa. En el caso de autos, ninguno de los referidos criterios se hace presente. Tal cual discutido, el certificado de incorporación de ISG no arroga autorización expresa alguna a sus accionistas para solicitar su disolución. Por su parte, en cuanto a que los desacuerdos entre sus accionistas, los cuales, conforme a la prueba, surgen por razón de ciertos incumplimientos en parte atribuibles al apelante, nada en el expediente sostiene que los mismos tengan un efecto nocivo real sobre las operaciones de la Corporación. Más allá de meramente aducir a la falta de confianza y de comunicación entre los

---

[5] Véase: *Recurso de Apelación,* Señalamientos de Error, pág. 4.

accionistas de ISG, el apelante no controvirtió el hecho de que los negocios de la Corporación, a pesar de las diferencias de sus accionistas, no se han visto afectados, de modo tal que resulte imperativo el nombramiento de un administrador judicial. Así pues, el apelante no expuso hechos concretos debidamente respaldados por evidencia, que ameritaran el curso de acción solicitado, ni sostuvieron sus argumentos con prueba suficiente sobre las circunstancias que avalan el mismo. Por ello, ningún abuso de discreción puede imputarse al tribunal primario al resolver la improcedencia del remedio solicitado por el apelante al amparo de lo establecido en el Artículo 14.15 de la Ley 164-2009, *supra.*

Ahora bien, en cuanto a los argumentos relacionados a la aplicación de los remedios estatuidos en los Artículos 14.16 y 14.17 de la Ley 164-2009, *supra,* resolvemos no expresarnos en torno a los mismos. En primer lugar, de los documentos de autos se desprende que, mediante *Resolución*[6] notificada el 28 de marzo de 2022, el Tribunal de Primera Instancia declaró *No Ha Lugar* una solicitud de designación de director provisional incoada por el apelante, tras resolver que este no cumplió con el estándar establecido en el Artículo 14.16, *supra,* para prevalecer en su petitorio. El apelante solicitó la reconsideración de dicha determinación, requerimiento que fue denegado mediante *Resolución*[7] notificada el 13 de abril de 2022. Dicho pronunciamiento advino final y firme. Sin embargo, el apelante nuevamente reproduce la solicitud de designación de director provisional en esta etapa de los procedimientos, sin que haya presentado una nueva petición ante el Tribunal de Primera Instancia. Sabido es que el Tribunal Supremo ha establecido que, como regla general, los foros revisores debemos abstenernos de

---

[6]Véase: Apéndice [de] Recurso de Apelación, Anejo 36, pág. 1571.
[7]Véase: Apéndice [de] Recurso de Apelación, Anejo 38, pág. 1593.

adjudicar cuestiones no presentadas ni atendidas por los tribunales inferiores. *Sánchez Ruiz v. Higueras Pérez et al.,* 203 DPR 982, 993 (2020); *Trabal Morales v. Ruiz Rodríguez,* 125 DPR 340, 351 (1990). Por tanto, nada podemos proveer sobre la solicitud de designación de un director provisional propuesta por el apelante. Bajo igual raciocinio legal, nos abstenemos de expresarnos en cuanto a su requerimiento sobre la aplicación del remedio estatuido en el Artículo 14.17, *supra.* Ello, toda vez que nada en la prueba demuestra que el apelante haya presentado el correspondiente planteamiento ante la consideración de foro sentenciador, a los fines de solicitar la disolución corporativa contemplada en dicho Artículo.

El expediente que nos ocupa nos ha permitido constatar que las determinaciones emitidas por el Tribunal de Primera Instancia encuentran apoyo legal y fáctico en los documentos presentados. El pronunciamiento apelado interpreta y aplica correctamente la norma vigente en nuestro estado de derecho, ello a la luz de una juiciosa y razonable apreciación de la prueba que ante el tribunal primario se presentó. De este modo, dado a que la parte apelante no controvirtió los hechos establecidos por las entidades aquí apeladas, resolvemos que no existe controversia de hechos alguna sobre la corrección de la totalidad de la desestimación resuelta, particularmente en cuanto a los asuntos traídos a nuestra consideración. Así, pues, se sostiene el dictamen parcial apelado en toda su extensión.

**IV**

Por los fundamentos que anteceden, se confirma la *Sentencia Parcial* apelada.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones